**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| **George Nieves,** | Case No:        5:21-cv-29 |
| *Plaintiff,* | |
| v. | Ad Damnum:  **$1,000 + Atty Fees & Costs** |
| **Equifax Information Services, LLC,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **George Nieves**, ("**Mr. Nieves**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC** ("**Equifax**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Nieves against Equifax for violations of the **Fair Credit Reporting Act**, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

1.      Jurisdiction arises under FCRA, 15 U.S.C. §1681p, and 28 U.S.C. §1331 because the cause of action arises under the FCRA, a federal statute

2.      The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to 28 U.S.C. §1331.

3.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and / or caused by the Defendant within the Middle District of Florida.

## PARTIES

2.     **Mr. Nieves** is a natural person residing in Clermont, Lake County, Florida and a *Consumer* as defined by 15 U.S.C. 1681a(c).

3.     **Equifax** is a Georgia corporation, with a primary business address of **1550 Peachtree Street NW, Atlanta, GA 30309**.

4.     Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

5.     Equifax is a nationwide *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.  As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Mr. Nieves' March 2019 Consumer Disclosure

6.     On or about March 8, 2019, Mr. Nieves requested a copy of his consumer

credit disclosure from Equifax.

7.     Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Nieves' request, Equifax was required to "clearly and accurately" disclose all information in Mr. Nieves' file at the time of his request, with the limited exception that his Social Security number could be truncated upon request.

8.     Equifax provided an electronic copy of Mr. Nieves' *Consumer Disclosure* ("**Equifax's Disclosure**") to him at his home address in Clermont, Florida.

## Equifax's Disclosure Was Not Complete, Clear, or Accurate

### Missing Original Creditors

9.     Despite a requirement to disclose all information in his credit file at the time of his request, Equifax's Disclosure omitted significant amounts of information contained in his credit file.

10.     Equifax's Disclosure indicated that Mr. Nieves' credit file contained two accounts classified as "Other." **SEE PLAINTIFF'S EXHIBIT A.**

11.     Equifax's Disclosure stated: "Other accounts are those that are not already identified as Revolving, Mortgage, or Installment Accounts such as child support obligations or rental agreements." *Id.*

12.     One such account appearing in the "Other" section was reported by Portfolio Recovery Associates ("**PRA**").

13.     PRA is a *Debt Buyer* – a company whose primary purpose is the purchase and collection of debts which were originally owed to third parties.

14.     As PRA does not lend to consumers, it is *never an Original Creditor.*

15.    Despite this, when disclosing the PRA tradeline to Mr. Nieves, Equifax indicated that the Debt Buyer - PRA - was the *Original Creditor* of the account, omitting entirely any reference to the *Original Creditor.*

16.    Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), under the "Account Details" section of the account, Equifax placed a notation, "Contact the creditor or lender if you have any questions about it." *Id.*

17.    Equifax thus shifted the burden of disclosure and inquiry away from itself, and onto Mr. Nieves.

### Missing Account Numbers

18.    Making matters even more confusing for Mr. Nieves, Equifax omitted the account number relating to the PRA tradeline.

19.    On information and belief, PRA reported the full account number belonging to Mr. Nieves' account to Equifax, and this information is contained within Equifax's file regarding Mr. Nieves.

20.    When Equifax produces and sells reports regarding Mr. Nieves to third parties, the full account number and name of the original creditor is included in its reports.

21.    The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

22.    Equifax's disclosure contains a section entitled "Collections," stating: "Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency.  Collections stay on your credit report for up to 7 years from the date

the account first became past due.  They generally have a negative impact on your credit score."

23.     PRA is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency*.

24.     Thus, Equifax should have placed this tradeline under the "Collections" header of Mr. Nieves' Disclosure, rather than the "Other" header.

25.     In addition to the missing account number from PRA, a significant number of accounts reported by other data furnishers were also missing account numbers.

26.     Under the heading *Other Accounts*, Equifax disclosed an account reported by American Express without any account number.  **SEE PLAINTIFF'S EXHIBIT A.**

27.     Additionally, under the heading *Revolving Accounts*, there are twenty-nine (29) tradelines with no account numbers whatsoever.  **SEE PLAINTIFF'S EXHIBIT B**.

28.     Tradelines without an account number under the *Revolving Accounts* heading include:

- Chase Card ("**Chase**") (three accounts)
- Capital One Bank USA NA ("**Capital One**") (five accounts)
- Synchrony Bank USA, N.A., regarding Wal-Mart, which Equifax refers to as "SYNCB/WalMart" ("**Wal-Mart**")
- USAA Savings Bank ("**USAA**") (two accounts)
- Credit One Bank ("**Credit One**")
- Wells Fargo Card Services ("**Wells Fargo**")
- Community Bank NA regarding CitiCards, which Equifax refers to as "CitiCards CBNA" ("**CitiCards**") (three accounts)
- Bank of America ("**BOA**") (three accounts)
- Navy Federal Credit Union ("**Navy Federal**")
- Synchrony Bank USA, N.A., regarding Amazon PLCC, which Equifax refers to as "SYNCB/Amazon PLCC" ("**Amazon**")
- Synchrony Bank USA, N.A., regarding Lowes, which Equifax refers to as "SYNCB/Lowes" ("**Lowes**")

- Synchrony Bank USA, N.A., regarding Sams Club, which Equifax refers to as "SYNCB/Sams Club" ("**Sams Club**")
- Discover Bank ("**Discover**")
- Tidewater Finance Company ("**Tidewater**")
- Military Star ("**Military Star**") (two accounts)
- Kay Jewelers ("**Kay Jewelers**")
- J.B. Robinson ("**J.B. Robinson**")

29.    Equifax disclosed three (3) accounts reported by Chase, five (5) accounts reported by Capital One, two (2) accounts reported by USAA, three (3) accounts reported by CitiCards, three (3) accounts reported by BOA, and two (2) accounts reported by Military Star, without any account numbers whatsoever.

30.    The disclosure of multiple accounts reported by the same furnisher of data – in the instant matter, Chase, Capital One, USAA, CitiCards, BOA and Military – without the corresponding account numbers would make disambiguation of the multiple accounts difficult, if not impossible.

31.    As a result, a consumer would have a diminished ability to compare the records on his consumer credit disclosure against his own records to spot and challenge any potential errors or inaccuracies.

32.    On information and belief, all the aforementioned data furnishers reported full account numbers to Equifax, and this information is contained within Equifax's file on Mr. Nieves.

33.    Due to widespread systemic problems, Equifax's automated systems omit the *entire* account numbers from revolving accounts reported by data furnishers that have a reported current payment status of "charge off," in addition to many other types of accounts.

34.     Equifax knows of this error but, despite such knowledge, has yet to correct it.

35.     The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

36.     The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

37.     Further, the lack of accurate, full account numbers caused Mr. Nieves great frustration and emotional distress when trying to understand his credit report and verify it against his own records.

38.     Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." **SEE PLAINTIFF'S EXHIBIT C.**

39.     Equifax's omission of the original creditor and account numbers greatly decreases a consumer's ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records.

40.     The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("**CDIA**"), a trade association representing the CRAs, including Equifax, states that:

> "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports**. Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original**.)

**SEE PLAINTIFF'S EXHIBIT D.**

41.     The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

42.     On information and belief, PRA complied with the *Credit Reporting Resource Guide* and reported the name of the original creditor of its account to Equifax.

### "Undesignated" Account Ownership Issues

43.     Equifax also disclosed to Mr. Nieves that the owner of six (6) accounts were reported as "UNDESIGNATED." **SEE PLAINTIFF'S EXHIBIT E.**

44.     The six (6) accounts Equifax disclosed in its disclosure to Mr. Nieves are as follows:

- Case
- Capital one
- Wal-Mart
- CitiCards (two accounts)
- BOA

45.     Upon information and belief, the "owner" header refers to the ***Equal Credit Opportunity Act Code*** ("**ECOA Code**") reported by the six (6) data furnishers.

46.     The *Credit Reporting Resource Guide* states that the ECOA Code "defines the relationship of the consumer to the account in compliance with the Equal Credit Opportunity Act." **SEE PLAINTIFF'S EXHIBIT F.**

47.     Equifax's Disclosure erroneously stated that the ECOA code was "0" or *Undesignated*.

48.     None of the six accounts could have reported an ECOA Code of "0," since that Metro II code was retired as obsolete as of September 2003. *Id.*

49.     Further, even prior to September 2003, the code could only have potentially applied to an account opened prior to June 1977, which none of Mr. Nieves' accounts were.

50.     The CitiCard account disclosed with an undesignated owner is the oldest such account.

51.     The CitiCard account was opened in January 2006 – more than **29 years** after the cut-off for accounts bearing this ECOA Code.

52.     The five other accounts disclosed with undesignated owners were open more than **29 years** after the cut-off for accounts bearing this ECOA Code.

53.     Equifax's complete omission of the relevant owner of the account would make it difficult to compare the information in his records with the information shown on his disclosure.

54.     On information and belief, the correct ECOA Code regarding each of the six (6) accounts appear in Equifax's file on Mr. Nieves.

### Disclosure Falsely Claims Accounts Were Payroll Deductible

55.     Mr. Nieves' Equifax disclosure also contained twelve accounts disclosed with a comment stating "*Payment is payroll deductible*." **SEE PLAINTIFF'S EXHIBIT G.**

56.     The phrase, "payment is payroll deductible," appeared in accounts reported by:

- Chase (two accounts)
- Capital One (three accounts)
- USAA
- CitiCards
- BOA (two accounts)
- Navy Federal
- Lowes
- Discovery

57.     No payment is being, or ever was, withheld from Mr. Nieves' paycheck - for any of these accounts.

58.     Indeed, none of these accounts reported to Equifax that their accounts were "payroll deductible."

59.     Moreover, none of these accounts *could have* reported to Equifax that the account was payroll deductible, since the "Metro II" special comment code "AJ," meaning

"payroll deduction," was *discontinued* in September 2011 and no longer valid after this time period.

60.    Metro II codes are standardized codes used by data furnishers who report to nationwide CRAs, and are administrated by the *Consumer Data Industry Association* ("**CDIA**"), a trade group which represents the major nationwide CRAs, including Equifax.

61.    Equifax, like other nationwide CRAs such as Experian and Trans Union, requires its furnishers of data to report account history using Metro II.

62.    On information and belief, the data furnishers for the accounts marked as "payment is payroll deductible" reported their accounts as "closed by credit grantor."

63.    On information and belief, Equifax, when producing any consumer disclosure through annualcreditreport.com, prior to January 2020, erroneously translated the Metro II code for "closed by credit grantor" into the code "payment is payroll deductible."

## Prevalence of Equifax's Errors

64.    On information and belief, Equifax's Disclosure to Mr. Nieves was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

65.    On information and belief, their same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

66.    On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

67.    Consumer disclosures retrieved through www.annualcreditreport.com all exhibit the same missing account number and missing original creditor name issues.

68.    Likewise, due to widespread systemic problems, Equifax's automated systems errantly disclose account with undesignated ownership on disclosures produced through www.annualcreditreport.com.

69.    Equifax's errors have therefore affected thousands of consumers.

70.    Equifax has known of the flaws in its systems for years, but has done nothing to fix them, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

71.    Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

72.    Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by its desire to avoid costs and increase profits.

73.    Mr. Nieves has a right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

74.    Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Mr. Nieves deprived Mr. Nieves of this right.

75.    Mr. Nieves has hired the undersigned law firm to represent him in this matter and has assigned to them his right to obtain reimbursement for his reasonable fees and costs.

## COUNT I
## VIOLATIONS OF THE FCRA

76.     Mr. Nieves adopts and incorporates paragraphs 1 - 75 as if fully stated herein.

77.     Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Nieves' request for his consumer disclosure by failing to clearly and accurately disclose to Mr. Nieves, a *Consumer*, all of the information in his file at the time of the request. Specifically, Equifax disclosed an account reported by PRA without disclosing the account number or the name of the *Original Creditors* and disclosed twenty-nine (29) other accounts without account numbers, even though full account numbers were reported by the data furnishers.  Additionally, Equifax disclosed six accounts with an ECOA code of *Undesignated* and twelve accounts with the comment "*Payment is payroll deductible*," which were false and not actually reported or contained in Mr. Nieves' file.

78.     Equifax knowingly provided inaccurate information in Mr. Nieves' disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

79.     Equifax's failure was a willful failure to fulfill its duty to clearly and accurately disclose to Mr. Nieves all of the information in his file at the time of the request pursuant to **15 U.S.C. § 1681g(a)(1).**

**WHEREFORE,** Mr. Nieves respectfully requests that the Honorable Court enter judgment against Equifax for:

a.      Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.      Punitive Damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3);

and,

d.      Such other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Mr. Nieves demands a jury trial on all issues so triable.

Respectfully submitted on January 14, 2021 by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Dow*
Bridget L. Dow
Florida Bar No.: 1022866
BDow@seraphlegal.com
/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**

A.      Mr. Nieves' Equifax Consumer Disclosure, March 8, 2019, Excerpt – *Other Accounts.*
B.      Mr. Nieves' Equifax Consumer Disclosure, March 8, 2019, Excerpt, *Revolving Accounts*—Missing Account Numbers
C.      FTC Opinion Letter.
D.      *Credit Reporting Resource Guide*, Original Creditor Name Excerpt.
E.      Mr. Nieves' Equifax Consumer Disclosure, March 8, 2019, Excerpt – "Undesignated" Account Ownership
F.      *Credit Reporting Resource Guide*, ECOA Codes Excerpt.
G.      Mr. Nieves' Equifax Consumer Disclosure, March 8, 2019, Excerpt – Payroll Deductible